May it please the Court, I'm Alan Morrison on behalf of the Plaintiff Appellant, Americans for Safe Access. This case is brought under the Administrative Procedure Act, and the claim relied on is under the Information Quality Act, a law enacted by Congress in the year 2000 to deal with what Congress considered to be problems of agency dissemination of inaccurate information. The plaintiff's claim here is that the defendant, Health and Human Services Department, has failed to respond in any substantive manner to its information correction request, which it filed pursuant to specific authorization contained in the Information Quality Act, following the procedures set forth therein that give affected persons the right to seek and obtain corrections of information that they believe to be erroneously disseminated by Federal agencies. Counsel, excuse the interruption, but I'm a little confused about what right you are asserting. You clearly emphasize the right to file a petition for correction under the IQA. As I see it, conceptually there are two different potential rights. A procedural right to a non-arbitrary response and a substantive right to receive quality information. Which right are you asserting? We are asserting both rights, Your Honor, but at this stage of the proceeding, we are asking for a substantive response to our petition that deals with the merits of our petition and either admits that we were correct and corrects the errors made or explains in valid reasons why we are wrong. Ultimately, we hope to receive an actual correction. But since the agency has not chosen to respond substantively to the positions we've taken, we believe at this stage all that the Court is in a position to order is that the agency respond substantively, at which point we will then consider what our options are. This then raises the question of standing, which neither party discussed in the briefs. You litigated standing in the district court, but the district court did not reach this issue in its motion to dismiss, although it discussed this whole case. To me, it's very confusing, and I would like you to address standing head-on, if you would. Yes, Your Honor. Americans for Safe Access is an organization whose goal it is to assure the accurate dissemination of information about the proper use of medical marijuana. Many of its members have used medical marijuana, and the organization wishes to be able to disseminate that information and to assure that there is truthful information available. But of course, I mean, it is a very strange harm, because usually under the First Amendment, our concept is that people, we have a marketplace of ideas, and that includes the government. The government can say X, and you can say Y, and that's fine. So how are you being harmed by the government saying X, even if you think it was wrong? The Information Quality Act changed that, Your Honor, because the Congress stepped in and said, we recognize that information dissemination, if the information is not quality information, doesn't meet the standards of objectivity, utility, and so forth, set forth in the Act, that it can cause positive harms to people. And in our case, the dissemination of information causes harms because it requires our organization to combat HHS's positive statements that medical marijuana has, the first one that they say is there are no scientific studies to support it. Our petition has three pages' worth of scientific studies that support medical use of marijuana. That is flatly wrong in our view. And what we have had to do in the meantime is spend our time and money, and will continue to have to do that, because when people go on the website these days, they look to HHS as it proclaims itself to be the primary health organization in the United States. So naturally they look to what HHS has to say. And when HHS is disseminating what we believe to be false information, our organization is hindered by that, and our mission is made more difficult, and we have to spend time and money combating that false statement. On that issue, assuming you do not have a subject right to receive quality information, what I don't understand is the issue you allege is the alleged misinformation, and what you said the funds you use to expend. How does vindicating a procedural right, a right to have a timely answer, redress the harm from the misinformation? Well, I would say, Your Honor, it's the first step. If we don't get a substantive response, we're not going to get any information correction at all. Once we get a substantive response, maybe the government will say that all of the studies we show actually do constitute scientific evidence, and it will correct that mistake and the others we've set forth in our petition. But if they at that point, the eventual harm that we have to combat is the false information. But we have to. So your position, this is why I was about to ask before, is ultimately you could come to court and you could say, we asked the government to correct it, and they didn't correct it, and there are noncorrections inconsistent with the guidelines, and we want the court to say that they should have corrected it. Ultimately, we believe the court has that power. Two and two is four, and not five. Either there are studies that support the medical use of marijuana, or there are not. And in other situations like this, where the government makes factual determinations, at the very least, the court is in position to say whether the reasons given by the government for refusing to correct them are arbitrary and capricious. But we can't get to that stage unless the government first does what it has refused to do here, which is to provide a substantive answer. It is as it was here. We're working on this. There's a separate scheduling issue going on, and we'll get to it. Well, I want to say this, and I want to apologize to the court, because I didn't make it clear in my brief, and I should have. The government says that there is a DEA rescheduling proceeding going on. That is a little bit of an overstatement. The only thing that's happened so far, and this happened in October of 2002, six and a half years ago, is a group of organizations filed a request for the government to initiate a rescheduling position. Under 811A, the government may do this, but it may only do this by commencing a formal rulemaking proceeding. They previously did this, and it took 22 years to get through this proceeding. It is a formal rulemaking. There's a hearing before an administrative law judge, and then it goes to DEA. The government has not even put out a notice for the formal rulemaking yet. All that it has done so far is to request that HHS provide an input. The government says that HHS provided that input in 2006. We haven't seen that input. I don't know why we haven't seen it, but we haven't seen it. Maybe that would answer our information correction request. But as of now, we have no idea even whether the government is going to commence the proceeding. And as the Court is probably aware, agencies have wide discretion, as they probably should, to decide whether to commence a rulemaking, especially a formal rulemaking, which would be much more procedural, latent, take time and resources. Hopefully they will commence a rescheduling petition. But we have no assurance. Meanwhile, the harm to ASA and the organizations and the individuals it supports and the cause it supports of having this false information continue to be disseminated by HHS goes on and on and on. And we don't know when, if ever, we will get a response from HHS, let alone a final decision from DEA, which would then probably have to go to court. And the last time it went to court, somebody was thrown out because they lacked standing. So the notion that this is a reasonable alternative remedy is simply not correct. Moreover, as a matter of law, the APA presumes that agency decisions are judicially reviewable unless it's precluded by statute, which is, I take it, what the CSA argument is, or there is no law to apply and it's committed to agency discretion. As far as preclusion is concerned, it's worth noting that the Information Quality Act makes no reference to the CSA, nor does the CSA make any reference to the Information Quality Act. And since we are asking for something from HHS, which is to stop disseminating false information, and the rescheduling petition asks something from another agency to reschedule the drug, those two are not at all the same. And we can't do that. Kennedy. Was the factual conclusion by HHS made in the context of a prior rescheduling proceeding? I'm sorry, Your Honor. I'm not sure I understand. The statement to which you object, was that made by HHS in the context of a previous DEA rescheduling determination? It was, and it has continued to be repeated, and it continues to be repeated, as we've alleged in our complaint and not denied by HHS. And since these are disseminations that occurred after 2002 when the Information Quality Act had been in effect, the regulations and guidelines state quite clearly that the information correction procedures apply to all disseminations occurring after the effective date. And so even though it is true that initially these statements were made before 2002, the fact that they continue to be disseminated gives us a fresh right to seek correction, and they continue to disseminate them. Well, I can't help but remember when I was in law school working prison legal services and encountering my client one day, and he was real happy, and he was real happy because the key witness against him in his conviction had died, and he figured, well, the government can't prove its case against me anymore. And I had to tell him, well, they don't have to keep proving its case against you. You've been convicted. That's it. Now, this is past history. Why don't we take that statement as past history? Well, Your Honor, the first reason is because the Information Quality Act didn't exist at that time. In 1995, it did exist. I mean, there was a review of the DEA's scheduling determination, and the D.C. Circuit sustained it. Well, it dismissed for want of standing, Your Honor. And my client, Americans for Safe Access, was not legally in existence until after that determination was made by the D.C. Circuit, and so it could not have brought it. And it's hard to see how we can be precluded with a statute that was not enacted until after the statements were made. More generally, what constitutes dissemination here? Is anything that shows up on any government website about something that happened 10 or 15 years ago going to be subject to dissemination? The real problem is that, in general, it's a somewhat frightening procedure. I mean, to have... Statute, Your Honor. Yes, the statute, i.e. to have... It hasn't seemed to frighten the government very much so far, Your Honor. It frightens me if we're forced to be the repository of all these cases that don't like what the government says, not what the government does, but what the government says. I would hope, Your Honor, that the government does a good job with its information correction and information dissemination matters. And dissemination, by the way, Your Honor, there's a whole list of definitions in there, but one thing is dissemination is putting information up on your website. I mean this factor. Excuse me? Is there a currency factor? Well, it has to be post-2002, Your Honor. There's no time limit in which you have to request an information correction request. Some government website puts up something saying there's a dispute about evolution. Here's what some people say and here's what other people say. Do we have to correct the evolutionary evolutionists or the non-evolutionists? Well, one would have to look and see what they said, Your Honor. The first thing I would say, of course, is you have to file an information correction request pointing specifically to the errors that the government has made and what you believe is the basis upon which you contain the government made erroneous statements. One would hope that, unlike this case, the government would actually respond and say we have said some people said this and some people said that and that's all we're saying. It's when the government makes absolutist statements which are plainly wrong, Your Honor, that that's what this law is intended to correct. And maybe it's not a good law and maybe it should be changed and maybe it should be amended. Congress did assure that before anybody went to any court, they had to exhaust their administrative remedies. And the agency has to ---- Your Honor, I would say it would not. And I'll give you an example of that. Surely the Article 3 standing requirement would continue to exist and would, in many cases, make life very difficult for people who wanted information correction requests and wanted to take them to court if they were dissatisfied. But the ---- there's no reason to think that they imputed all of Article 3 into this proceeding. In fact, in the analogous rescheduling case, the one in which there was held to be no standing, the Court specifically said that interested persons, which is not exactly the same as affected persons but similar, was a ---- It's quite different, actually. It seems to say something about injury. Well, affected persons is, of course, a term in the APA itself. In 702. Or otherwise adversely affected. I believe the terms are, Your Honor. I could quote it exactly. It's in our addendum. The ---- but in any event, the Court said that whatever they are, Article 3 has different sets of requirements than there are at the Administrative Procedure Act, and it's often common to allow people to make administrative requests without satisfying the requirements of Article 3. So the agent ---- the Congress has indicated ---- has no indication that they are intending to narrow the people who are making requests. The question is, of course, whether you can go to court. And I agree fully that we have to ---- But we had some attempt to ---- It's affected persons rather than any person such as persons who can make an FOIA request. So, yes, Your Honor, it is true that there are some narrowing of that to that extent. May I ---- if I may say just one word about the Salt case from the Fourth Circuit, which purported to go off on standing grounds. It's a case, as we pointed out in our brief, and we've quoted the portions of the opinion, although this was an information correction request, the Court's opinion specifically says the loan request by the petitioner was not to correct information, although that was their ultimate goal. So their loan request was for access to studies, and the Court and the agency properly deemed this as an FOIA request. It seems to me that that case was being brought directly under the statute without any guidelines. The Court kept saying, well, this is just between agencies. In fact, the statute generated guidelines, and the guidelines specifically run to individuals having ---- affected individuals who are seeking ---- who can seek and obtain corrections. So I ---- they just didn't seem to be looking at that part of the statute at all. Yes, I agree, Your Honor. Because it wasn't relevant to the request that had actually been made by the Salt Institute. And that request was for documents. The Court said that this is a misguided IQA request. IQA is for correction of records, not for documents that might lead to the correction of records. Okay. Your time is up. We'll give you a couple minutes to rebuttal. Thank you, Your Honor. It's a hard case, and you probably should have allowed a little more time. May it please the Court. Elisa Klein for the Secretary of Health and Human Services. I'm going to start with the narrow issue presented in this case and then turn to the broader issue that was presented in Salt, which concerned the enforceability of the IQA generally. And I did ---- I briefed and argued Salt, so I'm familiar with the arguments that were raised. The narrower question presented here has to do with the substance of the issue raised in the correction request. The plaintiff is raising the same medical use issue in two different administrative proceedings. They've raised it in the petition to reschedule marijuana that's pending with DEA, and there's no question that medical use is raised there and that it's one of the statutory criteria for retaining or removing marijuana from Schedule I. And that's why they're employing the statutory language of the Controlled Substances Act, whether marijuana has a currently accepted medical use and treatment in the United States. The State Chase Guidelines, as I understand it, say something to the effect that it's okay to defer, not answer a correction request if it's going on somewhere else as long as there's not going to be any harm to the person, and something to that effect. And the question, I suppose, is whether they've alleged harm given how long the other I'm sorry. Your order a little disconcerting. We're now discussing this as if it's all going to be reviewable, and in a little while you're going to tell us that it's not reviewable. Well, the issue of medical use, whether marijuana has a currently accepted medical use and treatment in the United States, is an issue that will be addressed in connection with the rescheduling petition. That's a statutory perspective. They can come to court and say, nonetheless, they had to answer our correction request in some substantive fashion, and then we and I assume you're going to tell us the answer to that question is no. Exactly. But for several reasons. The first is, even if, unlike the holding of the Fourth Circuit in Salt, you were to regard action on a request for correction as final agency action that would otherwise be reviewable under the APA, and that was the same posture that was present in Salt, here still, because of the substance of the request, the exclusiveness of the Controlled Substances Act scheme is dispositive. That would – this is the track issue, the D.C. Circuit's decision in track, which this Court followed in the Public Utility Commissioner of Oregon case, where the issue could affect the future jurisdiction under the direct review provision. So that would be under the Controlled Substances Act direct review provision, A-77, then any preliminary issue that could affect that future jurisdiction has to be raised under the same direct review mechanism, and if there's no final action, it's in conjunction with the All Writs Act. I want to make sure I understand your argument here. You're saying there is no substantive right under IQA and HHS to receive quality information. All the right to be asserted here is a procedural right in response to the petition for correctness. Is that correct? Well, in our view, there are no legally, you know, judicially enforceable rights created by the IQA at all, but the specific request here, which is a demand that HHS decide the medical use issue divorced from the Controlled Substances Act proceedings, which are now pending, has no basis in any provision of law. And it's certainly clear that if you look at the request for correction, you look at specifically the arguments, they are the plaintiff is arguing that under the, you know, five-factor test articulated by the Drug Enforcement Administration in earlier marijuana scheduling decisions, those are the Act I and Act II decisions of the D.C. Circuit, that those, you know, three of those five factors should be regarded as satisfied. This is essentially asking HHS to revisit conclusions of an old rulemaking, even while there's a current rulemaking that addresses and will readdress the same issue. And so our narrower point is whatever you might think of the IQA. Is there a current rulemaking? Pardon? Is there a current rulemaking underlying? As a current rulemaking, the procedures, and these are statutory procedures, is that any interested party can petition DEA to remove something from Schedule I. And that's what triggers DEA then requests consultation with HHS, and the outcome of that proceeding is either the start of rulemaking in order to change the schedules or a denial that's subject to judicial review. Of this argument, it's not that it was reasonable and not arbitrary and capricious for the HHS to refer to the CSA proceeding, but that it was compelled to refer to the  And as the district court explained, yes, the plaintiff would need to show under Southern Utah and, you know, an APA 7061 claim that it is seeking to compel an agency action, a discrete agency action. For a different APA provision than the finality provision, they're claiming that this was a final action and that it is a parallel proceeding to the CSA. And although I can well understand an argument that would say yes, but it was perfectly reasonable under the guidelines and otherwise for the agency to defer to the CSA proceedings, I don't see why it would be required for them to defer the CSA proceedings. Well, we're not arguing that they're required, but it's certainly discretionary. You are arguing that. You're arguing, as I understand it, that the CSA proceedings are preclusive of this separate track. We're arguing that it precludes the plaintiff from asking the district court to address the medical use of marijuana or to say that HHS is moving too slowly on the medical use question, that those are arguments that would, if they were going to be raised anywhere, have to be raised under the Controlled Substances Act proceedings. All right. Let's move back up to the more general questions. The more general question, and just start with the background principle that's long established and against which the Information Equality Act was enacted, and that is that freestanding agency reports or other statements are not agency action, and for the same reason, the harm they cause is not. That's a specific individualized right to petition an agency to seek for affected people, and that's an issue that we need to deal with, to seek and obtain corrections. That sounds to me like it's something like the FOIA. Ordinarily, there was no right to get government information, but now there is one because it was created by the statute. The FOIA is written in very different terms. It requires an agency to make certain records public, and it specifically vests the district court with jurisdiction to compel the release of records if they're ---- But it does create a petition proceeding which leads to a conclusion. It appears to have to ---- and I don't know how the Salt Court missed this. They said that there was nothing in the statute that gave anybody any rights, but there is. It says affected people can seek and obtain corrections, and at the point that they ---- so I don't understand how you can say that that isn't both an individualized legal right and a final decision. This is where the Fourth Circuit very carefully analyzed the structure of the IQA because the Salt plaintiffs were arguing ---- Refer to any guidelines. As I understand it, this is not really under the IQA. It is under the HHS guidelines that were created by the IQA. Well, I'll come to nothing in the HHS guidelines required the agency to divorce the medical use issue from the pending consideration of the rescheduling petition, but ---- But that's a different question from whether there is something ---- and that would ---- that's basically what I was saying before, that it seems like there may be justification for this result, but I still want to know why the statute doesn't set up a system that is both ---- does provide an individualized legal right because it's in the statute and needs to provide a force for ---- The Fourth Circuit, the reason it's analyzing the structure of the IQA is because it's not written like the FOIA. It's a directive to OMB to issue ---- No. And OMB did issue guidelines, and HHS did issue guidelines, and it went out proceeding under those guidelines, and that didn't seem to be going on in the Fourth Circuit, which is why I think the case looks totally irrelevant. Well, I would ---- I'll offer to submit the brief from the Fourth Circuit because in fact the NIH guidelines were directly at issue in that case, and the Fourth Circuit was ---- It's not mentioned anywhere in the opinion. No, because the Fourth Circuit was making a different point, which is that Congress in the IQA did not create any legal entitlement to either obtain information or correct this, and the ---- Quote the language. They didn't even quote the secret obtained language. It was as if they didn't know it. No, sure they did. I'll pull it out. Hold on. Okay. So SALT, this is from the published opinion, page 158. They actually quote ---- they say the IQA provides in full. All right. Okay. And so they quote the whole ---- When they say there is no ---- They don't mention this provision. No, but the point is that what the provision does is direct OMB to direct agencies to set up administrative mechanisms, and then if you look at the language of the statute, what the agencies do is they report back to OMB. These are not judicial mechanisms. These are administrative mechanisms, and the agency reports periodically to the director of OMB the number and nature of the complaints received by the agency regarding the accuracy of its insemination disseminated and how such complaints were handled by the agency. And the reason is the reason alluded to during plaintiff's argument, which is that agencies disseminate countless pieces of information. Just thinking of a few recently, FDA advisories about pistachios and peanuts and ---- The statute is amazing, actually, and troubling for all these reasons, but ---- Well, this is the reason Congress very carefully did not set it up in a way that would lead to judicial review. These are administrative mechanisms with oversight by OMB, not ---- and nothing like the FOIA. It does create an individual right of access to the agency, a right to some decision by the agency. So then we have to know why the APA doesn't get plugged in at that point. Why doesn't it? Well, let me go to the OMB guidelines. So the first step is it says OMB, you know, issued these guidelines concerning very broad material, which is procedural and policy guidance about the quality of information. The OMB guidelines. We should be looking at the HHS. Well, start with the OMB guidelines, because that's then what HHS implements. And the OMB guidelines just say, to facilitate public review, agencies shall establish administrative mechanisms allowing affected persons to seek and obtain, where appropriate, timely correction of information maintained and disseminated by the agency that does not comply with the OMB or agency guidelines. These administrative mechanisms shall be flexible, appropriate to the nature and timeliness of the disseminated information, and incorporated into agency information resources management and administrative practices. That's not establishing ---- when you think of all the pieces of information, of course no one was establishing an entitlement to have an agency revisit any conclusion, no matter how old, as long as it's posted on its website, and to get some sort of, you know, quick substantive response subject to standardless judicial review for the quality of its response. That would be extraordinary, and there's nothing in the language of the IQA or the OMB guidelines, and certainly not HHS's own guidelines. Is there at least a action for procedure coercion, i.e. you're supposed to give me an answer as to why you're ---- whether you're going to correct this or not, or why you haven't corrected and you haven't done that. You have done it, but you've done it improperly. Well, again, this ---- the language I just read is extremely discretionary, and that makes sense, because agencies have limited resources. Now you're arguing under the prong that says that there's no coercion. You're arguing that nothing deprives an agency of discretion to, as here, say we're going to consider that in connection with other rulemakings or say ---- Here, there's no final action. There's no consummation of a decision-making process. There's just a deferral saying we're going to consider that in connection with your own rescheduling petition. Okay. So there's no final. All right. Suppose they had gotten a letter that said we ---- you sent us this petition, but we declined to consider it. And that's final. Would that be reviewable? No, Your Honor, because this is now, again, the background principle that a freestanding agency statement, even if you ask to have it corrected and then it's not corrected, still doesn't cause harm within the meaning of Article III. Yes. All right. It just would be helpful to me if I knew what we were ---- Well, part of the difficulties, as in this Court's decision in Guerrero, these inquiries essentially collapse. I mean, the fact that there's no agency action is a conclusion that reflects the fact that normally, just because someone might be ---- The statement was on a website that said Marsha Burzon is a spy and dangerous to the United States. I'm harmed. I assume you would agree I'm harmed. Can I just say something? In the same way that there's no question that the tobacco companies in the Fourth Circuit's flu-cured tobacco case were harmed in that sense by the EPA classification of secondhand smoke as a carcinogen. There was no dispute. That was a very serious case, and nobody really disputed the enormous practical import of the EPA classification. But what the Fourth Circuit explained is that's not cognizable legal harm. It's a freestanding report, no matter how significant, is not agency action. It doesn't make a difference just because someone said, we think that's wrong, would you correct it? That's that, as the Plaintiffs' Counsel pointed out, that was the holding of Getman. Just because Mr. Getman had standing to ask the agency to initiate rulemaking proceedings didn't mean he had Article III standing to then go to court when the agency said no. That's why his petition for review was dismissed on standing. So it's a combination of related standing and agency action issues, and we don't have either here. We don't have final agency action, but we also don't have agency action. Kagan. I really have a hard time understanding if the statute says or the guidelines say you can file a petition and we're going to act on it. Why isn't that an agency action? Well, it's not what the guidelines say. The statute says the guidelines should direct the agencies to issue guidelines that would establish administrative mechanisms to allow people to seek and obtain correction. That doesn't establish an entitlement to even a substantive response on every correction request, no matter how outdated or the information or what might be going on at the time. There have to be parameters, but the language of the guidelines is mandatory. It's not permissive. No, Your Honor. The guidelines just said allowing affected persons to seek and obtain where appropriate timely correction of information, and you also take they have to be appropriate to the nature and timeliness of the disseminated information. Here, the argument is that the plaintiff has a right to faster HHS action on a request to revisit an old conclusion in long-closed rulemakings than it has to action on a current petition for rulemaking that's now pending with DEA and HHS. That's not – that really makes no sense. And just to go back to Judge Clifton's question, there's no question that the request for correction asks HHS to reconsider the conclusions of a prior rulemaking. If you look at excerpts of Record 33, the title is Request for Correction of Information Contained in HHS Review of the Marijuana Rescheduling Petition of 1995. And – Well, there might be a myriad of reasons why the agency was appropriate in not doing this, but that's a different question from whether the statute is ever in any form enforceable by anyone. Well, we are not trying to make law. And it is not ultimately in any fashion enforceable by anyone. That is our position. But we are not here to make law. And as narrow as the Court wants to write the opinion, any ground for affirmance is fine with us. We try to frame it as narrowly as we could because we believe that the ongoing CSA proceedings are dispositive and the exclusiveness of that review procedure. But there's – it could be analyzed in terms of standing. The mere allegation that your members might believe statements and therefore act has never been thought enough to confer standing. Counsel, your time is up, but as I understand your argument, and tell me if I'm incorrect, you're simply saying there's no standing here. Because even if there is a timely response, there's no injury. Are you standing in your brief? We did, Your Honor. At the end of our brief, we argued that for closely related reasons, there is no standing here. And we absolutely agree that there is a standing problem in addition to and related to the other problems. All right. Thank you very much, Counsel. Mr. Marshall, you have three minutes. Thank you. First, I want to answer Judge Clifton's question you asked Ms. Klein. The answer to her question, Your Honor, is no. She didn't say it, but that's the answer. There is no proceeding pending. There's a request to initiate a proceeding which has been sitting there for six and a half years. That is not, in the language of the APA, an adequate alternative remedy. In every one of the cases that the government cites, somebody was trying to short review provision of the very same statute that was going on here. We have a different statute on which we're relying on. And the fact that something may be going on someplace else over DEA does not give them an excuse either not to answer it at all or certainly to treat it as precluded by statute, which is the relevant terms under the Administrative Procedure Act. Now, as far as standing is concerned, it is true the government has a footnote at the end of their brief on standing, and they did raise it marginally below. But they never contested our allegations as a factual matter. We had affidavits plus the petition explaining how our members were injured. It seems to me the government has more of an obligation to throw in a footnote there if they think the Court ought to decide this on standing. The standing is a term used to mean many different things. So I don't think that there's a question as to what the interest of your organization is. It really merges together with the question of what rights there are that anybody might have. Thank you, Your Honor. That states our position accurately. I do want to say a couple of words about whether there was a final agency action in the sense that they had concluded what they were going to do, not that they might never change their mind. But in record excerpts, page 52, which is the denial, which took six months to get, it says, This is a denial of your request. You may take an appeal. Appeal is a magic word suggesting they're finished, they're not going to revisit  And then when it gets to the appeal level, that first one is at 52 of the record excerpts. At 59 of the record excerpts, the appeals division says, Your appeal from the denial of the request is being considered and we'll get to it, which they got to in a year and a half. So there's no question that there was final agency action. They told us to go wait for DEA. And now finally they say when you get to court, not only do you have to wait for them, but that's the exclusive remedy. It's not precluded by statute for the reason I gave. It is not committed to the agency discretion to refuse to answer our information correction request. The government's basic position on this is Congress went to all this trouble to write the statute. And by the way, if you want to know why OMB didn't want judicial review, look at the legislative history, recognizing all the limits of legislative history. It's at the end of our addendum. There's excerpts from the hearing. And Jack Lew, who was then the director of OMB, said, We don't want this rules and regulations. We don't want any of this because we're afraid it's going to be litigation. Congress said, Thank you very much. And they passed the law anyway, from which you can draw the conclusions that we have here. There's no preclusion. But the government says, Despite all of this and the history laid out in our brief, this is all advisory. If you feel like answering, you can answer. If you don't want to answer, you can go and answer. And it's entirely between you and OMB, maybe, and the courts have no role whatsoever. This statute is not exactly like FOIA, although it's close. But FOIA does have a specific judicial rule. It's much more like NEPA or the Advisory Committee Act, which superimpose on the APA the substantive law, which the APA then uses to get you to court. It's a process that precedes an actual decision to do something, and the standing law requires that you have some interest to do something, not just in the information. It's true. It's different as a matter of statute. No, I offer those two statutes as provisions of law, which Congress passed into law without a judicial review provision, because the background judicial review provision is the APA, which grants judicial review unless it's either committed to agency discretion by law or precluded by statute with certain other specific exceptions which do not apply. Thank you very much. Thank you very much, Your Honor. I thank both counsel for a very useful argument and a very difficult case. Thank you.
judges: Dw Nelson, Berzon, Clifton, Cjj